UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM M. BOBO,

                            Plaintiff,

       -against-                                  1:07-CV-01056 (LEK/RFT)

WACHOVIA SECURITIES, L.L.C,

                            Defendant.

## MEMORANDUM-DECISION AND ORDER

Plaintiff William M. Bobo ("Plaintiff") commenced this action pursuant to the New York Human Rights Law ("NYHRL"), N.Y. EXEC. LAW § 290 *et seq.*, claiming that Defendant Wachovia Securities, L.L.C. ("Defendant" or "Wachovia") discriminated against him on the basis of his age, created a hostile work environment based on age discrimination and wrongfully retaliated against Plaintiff. Compl. (Dkt. No. 1-2) ¶ 30-32. This case originated in state court, but was removed to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Dkt. No. 1) Currently before the Court is Defendant's Motion for Summary Judgment. (Dkt. No. 40). For the reasons that follow, Defendant's Motion is granted and the above-captioned case is dismissed in its entirety.

## I.    BACKGROUND

In 2003, Defendant Wachovia Securities L.L.C. was formed by the merger of the retail securities brokerage and clearing businesses of Wachovia Corporation and Prudential Financial, Inc. Answer (Dkt. No. 7) ¶ 6. After the merger, there was an initial duplication of job functions resulting

in more than one employee competing for a single position.  Def.'s Statement of Material Facts

(Dkt. No. 40-1) ¶ 2, 3.  Defendant used a uniform assessment process to decide who would be

offered the position.  Id. ¶ 3.

At the time of the merger, Plaintiff was the Albany Complex Manager for Prudential, where

he had been employed since 1976.  Compl.¶¶ 11, 12.  Lance Million was the Albany Complex

Branch Manager for Wachovia.  Roddy Aff. (Dkt. No. 40-8 Ex. C-3) ¶ 6.  The complexes managed

by Plaintiff and Million covered the Albany and Saratoga territories for their respective firms; each

individual reported to his own Regional President.  Id. ¶¶ 7, 8.

As Regional President, Rick Capozzi was Plaintiff's direct supervisor, but Capozzi left

Wachovia before a decision was made regarding the management of the Albany Complex.  Capozzi

Aff. (Dkt. No. 40-7, Ex. C-2) ¶ 3, 6.  Nevertheless, Plaintiff asserts that before the merger was

effectuated in March 2003, Capozzi assured Plaintiff that he would be selected for the branch

manager position of the Albany Complex.  Pl.'s Statement of Material Facts (Dkt. No. 43- 7) ¶ 6.

Sometime after this assurance, Capozzi allegedly asked Plaintiff if he intended to retire, to which

Plaintiff responded he did not.  Id. ¶ 7.

In 2004, Theresa Roddy became the Regional President for Plaintiff's Region. and was

responsible for reviewing and interviewing candidates for the Complex Branch Manager positions

in her Region.  Roddy Aff. (Dkt. No. 40-8, Ex. C-3) ¶¶ 4, 5.  Roddy allegedly applied Wachovia's

uniform assessment process to all candidates she reviewed, including Plaintiff and Million, who

were competing for the Albany branch manager position.   Def.'s Statement of Material Facts (Dkt.

No. 40-1) ¶ 14.  The assessment process asked four objective questions of the candidate, whose

responses were scored by two reviewers.  Id. ¶¶ 15, 18.  Roddy and Regional Administrative

Manager Jim Carbonara were the reviewers for Plaintiff and Million. Id. ¶¶ 15, 31-32. Under the uniform assessment process, the employee with the higher score was to be offered the position. Id. ¶ 23. Allegedly, in every case in which an older candidate scored higher, Roddy selected the older candidate. Id. ¶ 25.

At the time of the interviews, Lance Million was forty-four years old and Plaintiff was fifty-nine years old. Crawford Aff. (Dkt. No. 40-9, Ex. C-4); Compl. ¶ 2. Plaintiff allegedly scored 3.9375, while Million scored 4.125. Def.'s Statement of Material Facts ¶ 34. Million was offered the position of Albany Complex Manager. Id. ¶ 37. Plaintiff was offered the position of Complex Manager for a newly created Saratoga Complex rather than being asked to accept a demotion to the position of financial advisor, typically the only option available to the lower scorer. Id. ¶ 38. Plaintiff accepted this offer. Id. ¶ 42.

During discovery, Defendant was unable to produce certain documents which detailed the scoring tallies created during the interviews for the Albany Complex manager position. Wachovia's company policy required the interviewers to create these documents during the assessment process and retain them. Pl.'s Statement of Material Facts, ¶¶ 17-21. Defendant produced one note written by Ms. Roddy stating that the "new guard" was loyal to Lance Million, while the "old guard" was loyal to Mr. Bobo. Pl.'s Statement of Material Facts ¶ 16.

Plaintiff complained twice about the decisions to hire Million and move Plaintiff to Saratoga. First, Plaintiff asked the President of the Private Client Group, Jim Donely, to reverse Ms. Roddy's decision, but Mr. Donely said he could not do so. Id. ¶ 41. Second, on August 23, 2004, Plaintiff wrote an e-mail to Danny Ludeman, the Chief Executive Officer of Wachovia Securities, expressing Plaintiff's disappointment in not being selected for the Albany position and

seeking an opportunity to discuss the situation with Mr. Ludeman.  Id.¶¶ 49-50.

On August 30, 2004, Plaintiff met with Ms. Roddy, who gave Plaintiff a memorandum of

reprimand.  Id. ¶ 53.  Plaintiff was reprimanded because: 1) he demonstrated a negative attitude

toward the Saratoga position; 2) he complained about the firm to potential recruits; and 3) there

were several incidents where Plaintiff engaged in rude and aggressive behavior toward the

Wachovia Real Estate associates.  Id. ¶ 54.  In response, Plaintiff sent a memo to Ms. Roddy

objecting to the reprimand.  Id. ¶ 60; Pl.'s Statement of Material Facts (Dkt. No. 43-7) ¶ 50.

Plaintiff's Complaint alleges that his transfer to the Saratoga branch was wrongful because it

was based on age discrimination.  Compl. ¶ 30.  Additionally, Plaintiff claims "[t]he terms,

conditions and privileges of plaintiff's employment with defendant were so altered as to constitute

discrimination on the basis of age in violation of the HRL."  Id. ¶ 31.  Finally, Plaintiff claims

Defendant wrongfully retaliated against Plaintiff.  Id. ¶ 32.

On April 17, 2009, Defendant moved for summary judgment.  Dkt. No. 40.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled  to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  "Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty

Lobby Inc., 477 U.S. 242, 248 (1986).  Summary judgment is appropriate "only when no reasonable

trier of fact could find in favor of the nonmoving party." Taggart v. Time, Inc., 924 F.2d 43, 46 (2d

Cir. 1991).

Once the moving party meets its initial burden of showing there is no genuine issue of

material fact, it is then up to the non-moving party to do "more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S.

574, 586 (1986). "The non-moving party may not rely on mere conclusory allegations nor

speculation, but instead must offer some hard evidence showing that its version of the events is not

wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). However,

"caution should be exercised in granting summary judgment where state of mind is in issue or when

the party opposing the motion has been denied relevant discovery." Flaherty v. Caughlin, 713 F.2d

10, 13 (2d Cir. 1983) (citations omitted).

When considering a motion for summary judgment, the court must resolve all ambiguities

and draw all reasonable inferences in favor of the non-moving party. Nora Beverages, Inc. v. Perrier

Group of America, Inc., 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this

point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential

Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## III.   DISCUSSION

### A. Age Discrimination

"Age discrimination claims brought under the New York State Human Rights Law, N.Y.

Exec. Law 290-301, are governed by the same standards as those brought under the ADEA."

Wanamaker v. Columbian Rope Co., 108 F.3d 462, 467 (2d Cir. 1997) (citations omitted). "Hence,

a district court may dismiss claims brought under the New York State Human Rights Law, on the

ground that the plaintiff failed to establish a claim under the ADEA." Id.  Where a plaintiff

"presents no direct evidence of discriminatory treatment based on age, [the Court] reviews[s]

[plaintiff's] ADEA claim under the three-step, burden-shifting framework established by the

Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Woodman v.

WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005).

The first step under the McDonnell Douglas test requires the plaintiff to establish, by a

preponderance of the evidence, a *prima facie* case for discrimination.  Tex. Dep't of Cmty. Affairs

v. Burdine, 450 U.S. 248, 252-53 (1981).  If the plaintiff  meets this burden, "the employer is

required to offer a legitimate, nondiscriminatory business rationale for its conduct." Feingold v.

New York, 366 F.3d 138, 152 (2d Cir. 2004).  If the defendant makes this showing, the burden then

shifts back to the plaintiff to show that "the legitimate reasons offered by the defendant were not its

true reasons, but were pretext for discrimination." Burdine, 450 U.S. at 253 (citing McDonnell

Douglas Corp., 411 U.S. 792, 802 (1973)).  "The ultimate burden of persuading the trier of fact that

the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

Burdine, 450 U.S. at 253.  Here, Plaintiff has sustained his burden of establishing a *prima facie*

case, but has failed to adequately rebut the legitimate nondiscriminatory reason offered by

Defendant for not selecting Plaintiff for the Albany Complex manager position.

1. *Prima Facie* Case

"To establish a *prima facie* case of age discrimination under the ADEA, a claimant must

demonstrate that: 1) he was within the protected age group; 2) he was qualified for the position; 3)

he was subject to an adverse employment action; and 4) the adverse action occurred under

'circumstances giving rise to an inference of discrimination.'" Terry v. Ashcroft, 336 F.3d 128,

137-138 (2d Cir. 2003) (quoting Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001)).

To be in the protected class under the ADEA, a plaintiff must be 40 years old or over. See 29

U.S.C. § 631(a). In this case, the Plaintiff has established a *prima facie* case. Plaintiff is within the

protected class because he was 59 at the time of the transfer. Compl. ¶ 2. In addition, Plaintiff was

qualified for the position. Def.'s Statement of Material Facts ¶¶ 39, 41. Furthermore, the record

supports Plaintiff's contention that an adverse employment action occurred under circumstances

giving rise to an inference of discrimination.

To prove an adverse employment action, plaintiff must show a "materially adverse change"

in the terms and conditions of employment. See Richardson v. New York State Dep't of Corr.

Servs, 180 F.3d 426, 446 (2d Cir. 1999). A materially adverse change may include "a termination

of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices . . .

unique to a particular situation." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d

Cir. 2000) (ellipsis in original); see also Kessler v. Westchester County Dep't of Soc. Servs., 461

F.3d 199, 206-207 (2d Cir. 2006).

Plaintiff contends that he suffered an adverse employment action because: 1) he had to leave

the Albany branch office he had successfully built up over 23 years; 2) he was required to move to

the Saratoga Complex, which was forty miles from his home; 3) he did not have an office, but rather

had to sit in the reception area; and 4) the new position was not revenue neutral. Compl. ¶ 22.

A transfer may be an adverse employment action if the plaintiff was transferred from an

"elite" unit to a "less prestigious unit with little opportunity for professional growth." De la Cruz v.

New York City Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 21 (2d Cir. 1996).  Therefore,

the transfer of Plaintiff to the Saratoga Branch by itself may constitute an adverse employment

action.  Plaintiff has offered some evidence that the Saratoga Branch was less prestigious: 1) it was

a small four-person office; 2) Plaintiff had no staff of his own; and 3) there was no operations

manager.  However, the Saratoga branch was expected to grow.  Hence, "the transfer arguably

altered the terms and conditions of his employment in a negative way."  Id..

      The issues of Plaintiff's office space and increased commute time taken individually might

only be inconveniences, but together these issues bolster the conclusion that the transfer altered the

conditions of Plaintiff's employment.  Most importantly, Plaintiff claims his compensation was

negatively affected despite being told the Saratoga position would be revenue neutral.  Compl. ¶

22(c).  Defendant argues Plaintiff knew his compensation would be based on the performance of the

branch and the Saratoga branch may not perform as well initially.  Defendant argues any change in

compensation must result from a demotion to qualify as a material adverse employment action and

that no such demotion occurred in this case.  The Court rejects Defendant's suggestion, as the issue

of compensation on its own is a material condition of employment.  Based on these factors, a

reasonable fact finder could find that the Plaintiff suffered an adverse employment action.

      Turning to the fourth prong, Plaintiff must show that the adverse action occurred under

"'circumstances giving rise to an inference of discrimination.'"  Terry, 336 F.3d at 138 (quoting

Roge, 257 F.3d at 168).  An inference of age discrimination can be supported by the fact that an

employer "replace[d] an older worker with a significantly younger one . . . even when both persons

are ADEA class members."  Woodman, 411 F.3d at 78-79) (citing O'Connor v. Consol. Coin

Caterers Corp., 517 U.S. 308, 312-13 (1996); Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d

93, 101 (2d Cir. 2001)).  In addition, plaintiff must offer some evidence to indicate that defendant

acted with knowledge of the alleged age discrepancy in order "to support the inference necessary to

establish a prima facie case."  Woodman, 411 F.3d at 80.

In regard to whether Plaintiff was passed over for a "substantially younger" candidate, the

Second Circuit has not adopted a clear standard for what constitutes "substantially younger." The

Seventh Circuit has suggested that "substantially younger" means "a ten-year difference in ages."

Hartley v. Wisconsin Bell, 124 F.3d 887, 893 (7th Cir. 1997).  The fifteen-year age difference in this

case between Plaintiff and Mr. Million fits within this framework and comports with the case law of

the Second Circuit.  See generally Byrnie, 243 F.3d at 102 (holding 22-year age discrepancy

between plaintiff and rival job applicant supports inference of age discrimination); Stratton v. Dep't,

132 F.3d 869, 879-80 (2d. Cir. 1997) (fact that plaintiff's duties were taken over by individuals 13

and 26 years younger supports inference of discrimination); see also Brennan v. Metropolitan Opera

Ass'n, 192 F.3d 310, 317 (2d Cir. 1999) (stating in dicta that a 14-year age difference satisfied

plaintiff's *de minimis* burden of establishing a *prima facie* case of age discrimination).

Regarding evidence of Defendant's knowledge of the age discrepancy, Plaintiff satisfied his

burden by offering evidence that the Defendant had the age of each candidate on file.  Therefore, its

is reasonable to infer the Defendant acted with knowledge of the age discrepancy.  Accordingly,

Plaintiff has provided the Court with enough evidence that could lead a fact finder to find that the

adverse employment action occurred under circumstances giving rise to an inference of

discrimination.  Plaintiff, therefore, has established all four elements of a *prima facie* case of age

discrimination.

2. Legitimate Non-Discriminatory Reason

9

In response to Plaintiff's *prima facie* case, the Defendant has successfully sustained its burden of producing a legitimate non-discriminatory reason for the allegedly adverse employment action.  Defendant maintains that the decision to not offer Plaintiff the Albany Complex Branch Manager position was based on the scores generated during the assessment process.  The Plaintiff scored lower and, therefore, was not offered the position.  Defendant's assessment process was a behavioral-based interview model premised on the idea that past behaviors are good predictors of future behavior.  Def.'s Mem. for Summ. J. (Dkt. No. 40-2) at 6 n.3.  Accordingly, Defendant has met its burden of providing sufficient evidence for a trier of fact to conclude that Plaintiff was denied the Albany Complex manager position for a legitimate non-discriminatory reason.

3. Pretext

Once the employer has provided the court with a legitimate non-discriminatory reason for the adverse employment action, the burden shifts to the plaintiff to prove that this reason was a pretext for unlawful discrimination.  See Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000) (citing Hollander v. Am. Cynamid Co., 172 F.3d 192, 200 (2d Cir. 1999)).  In order to survive summary judgment, the plaintiff alleging discrimination must "present[] sufficient evidence for a reasonable jury to conclude that [defendant] discriminated against him because of his age." Hollander, 172 F.3d at 200.  In the instant case, Plaintiff cannot establish pretext.

Plaintiff "cannot offer direct evidence of an improper discriminatory bias and thus must defeat summary judgment on the strength of his prima facie case combined with circumstantial evidence that [Wachovia]'s stated reason for failing to hire Plaintiff is pretext."  Byrnie, 243 F.3d at 102.  Plaintiff does not provide sufficient evidence to allow a reasonable jury to conclude that Wachovia's explanation for failing to offer him the Albany position was a pretext for impermissible discrim

First, Plaintiff argues that despite being better qualified for the position than Million, he was not offered the Albany position, and, therefore, a reasonable inference can be drawn that Defendant discriminated against Plaintiff.  While there is no dispute that Plaintiff was qualified, an "employer need not prove . . . that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory."  Davis v. State Univ. of N.Y., 802 F.2d 638, 641 (2d Cir. 1986).  In this case, Defendant based its decision upon the interview scores.  Upon the Defendant's showing of a nondiscriminatory reason, the Court may not second-guess the wisdom of the business decision.  See Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("Evidence that an employer made a poor business judgment . . . is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons.").  Consequently, Plaintiff's qualifications are not evidence of pretext.

Second, to support an inference of age discrimination, Plaintiff offers as evidence the inquiry by his former manager, Mr. Capozzi, whether plaintiff intended to retire.  Assuming, *arguendo*, such an inquiry has bearing on the discrimination issue, any comments by Mr. Capozzi's are irrelevant because he was no longer employed by Defendant when the decision to offer Million the Albany Complex was made.  Therefore, Mr. Capozzi had no role in the decision.

Third, Plaintiff points to Ms. Roddy's reference to the "new guard" being loyal to Lance Million, while the "old guard" was loyal to Mr. Bobo.  Pl.'s Statement of Material Facts ¶ 16.  Presumably, Plaintiff wants the Court to draw an inference that the use of the terms "old guard" and "new guard" evidences age discrimination.  However, this is not reasonable because the statement on its face does not pertain to age.  See Tubergen v. St. Vincent Hosp. and Health Care Ctr., Inc., 517 F.3d 470, 474 (7th Cir. 2008) (noting that "old guard" describes a conservative faction, so

11

members of the "old guard" need not be old).  Therefore, the "old guard" reference does not give

rise to an issue of material fact that would allow a reasonable fact finder to conclude Defendant

intentionally discriminated against Plaintiff because of his age.

Fourth, Plaintiff alleges that Defendant destroyed evidence relevant to Plaintiff's claim and

that such spoliation gives rise to an adverse inference that Defendant's hiring decision was

discriminatory.  Specifically, Plaintiff claims Defendant knowingly destroyed the documents created

during the interview process that were used to calculate the candidates' scores.  Pl.'s Mem. (Dkt.

No. 43-6) at 13.

In a borderline case, "an inference of spoliation, in combination with 'some (not

insubstantial) evidence' for the plaintiff's cause of action, can allow the plaintiff to survive

summary judgment."  Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001)

(quoting Kronisch v. United States, 150 F.3d 112, 128 (2d Cir. 1998)).  "[A] party seeking an

adverse inference instruction based on the destruction of evidence must establish (1) that the party

having control over the evidence had an obligation to preserve it at the time it was destroyed; (2)

that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence

was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it

would support that claim or defense."  Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d

99, 107 (2d Cir. 2002) (citing Byrnie, 243 F.3d at 107-12).  In the instant case, the Plaintiff cannot

establish the first and second prongs and, therefore, is not entitled to an adverse inference.

The first prong requires Plaintiff to show that the Defendant was under an obligation to

preserve the allegedly destroyed evidence.  An obligation to preserve evidence arises when a "party

has notice that the evidence is relevant to litigation . . . [or] when a party should have known that the

evidence may be relevant to future litigation." Byrnie, 243 F.3d at 107.  Additionally, the Second

Circuit has recognized that regulations of the federal Equal Employment Opportunity Commission

(EEOC) create a duty to preserve evidence. Id. at 108.

In this case, Defendant was required to preserve employment "records having to do with

hiring" for one year.  29 C.F.R. § 1602.14.  Presumably, the interview documents would fall under

this requirement.  But this action commenced three years after the documents were made, meaning

Defendant no longer had a legal obligation under EEOC regulations to preserve these documents.

Furthermore, Defendant could not have known the evidence may be relevant to future litigation

simply because Plaintiff voiced his objection to his transfer on two separate occasions; he never

expressed any intention to bring any claim or allege discrimination.  Moreover, Plaintiff does not

allege that Defendant destroyed the documents in violation of a duty to preserve evidence after

litigation began.  Therefore, because Plaintiff has failed to articulate any legal obligation requiring

on Defendant to preserve the interview documents, Plaintiff is not entitled to an adverse inference

under the theory of spoliation.

Even if Defendant did have an obligation to preserve the evidence, Plaintiff has not satisfied

the second prong, which requires that the evidence was destroyed with a culpable state of mind.  A

case by case approach is utilized to determine the requisite degree of culpability, which can range

from intentional destruction to ordinary negligence. See Residential Funding, 306 F.3d at 108;

Byrnie, 243 F.3d at 108.  In the instant case, the Court finds a negligence standard is not appropriate

given the isolated nature of the claim (a dispute over one position) and the extended period of time

between the document creation and the filing of the claim.  Plaintiff seems to admit as much, noting

in his allegations that the Defendant acted "knowingly."  Moreover, finding negligence as the

13

appropriate standard occurs in only limited cases.  Thus, for example, the Second Circuit has found

ordinary negligence may apply in cases involving worker safety from physical harm.  See Glover v.

Costco Wholesale Corp., 153 Fed. Appx. 774, 776–77 (2d Cir. 2005) (employer's negligent failure

to preserve the safety records relating to the physical harm suffered by plaintiffs met the requisite

level of culpability).

      Given the circumstances of the case at bar and the absence of physical harm, Plaintiff must

meet one of the more stringent levels of culpability, which Plaintiff has failed to do.  First, Plaintiff

offers no evidence to support his allegation that Defendant knowingly destroyed the documents

beyond the assertion that a Fortune 500 company should have been better able to retain its records.

Second, Plaintiff offers no evidence to refute Defendant's claim that the documents were

inadvertently lost during the merger process when there were three different Regional Presidents

and three different Regional headquarters responsible for the Albany/Saratoga branches.  Plaintiff's

inability to provide evidence that Defendant acted with a culpable state of mind, as well as failing to

establish Defendant's obligation to preserve evidence, renders analysis of the documents' relevance

unnecessary.

      Finally, Plaintiff offers Ms. Roddy's alleged comment that Plaintiff did not relate well to

younger Financial Analysts to create a reasonable inference that age was the real reason for

Plaintiff's transfer to the Saratoga Complex.  In the Second Circuit, "stray remarks, even if made by

a decisionmaker, do not constitute sufficient evidence to make out a case of employment

discrimination."  Danzer v. Norden Sys., 151 F.3d 50, 56 (2d Cir. 1998).  In other words, stray

remarks, "without more, cannot get a discrimination suit to a jury."  Id.  Because Plaintiff does not

provide additional evidence, Roddy's "stray remark" is not sufficient to defeat summary judgment.

Since "the Plaintiff has failed to show that there is evidence that would permit a rational fact finder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate." Patterson, 375 F.3d at 221; see also Smith v. American Express Co., 853 F.2d 151, 154-55 (2d Cir. 1988). Accordingly, this Court finds that Defendant is entitled to judgment as to Plaintiff's claim of age discrimination.

**B. Hostile Work Environment and Wrongful Retaliation**

In addition, Plaintiff's remaining two claims are without merit. Plaintiff's second claim alleges Defendant created a hostile work environment based on age discrimination. "In order to prevail on hostile work environment claim, a plaintiff must first show that 'the harassment was sufficiently severe or pervasive to alter the conditions of the victims's employment and create an abusive working environment . . . .'" Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (citing Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2003)). "Second, the plaintiff must demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer." Feingold, 366 F.3d at 149.

In the instant case, as discussed above, Plaintiff has failed to raise an issue of material fact that could allow a jury to find there was age discrimination. On Plaintiff's allegations, without age discrimination, there is no harassment or hostile work environment. Even if the two comments made by Ms. Roddy were discriminatory, her comments were not severe or pervasive enough for a reasonable fact finder to find the existence of a hostile work environment based on age discrimination. Summary judgment as to Plaintiff's hostile work environment claim is, therefore, granted in favor of Defendant.

Finally, Plaintiff claims Defendant wrongfully retaliated against him by issuing the letter of

reprimand.  Plaintiff alleges he received the reprimand because he complained about not receiving the Albany position.  The ADEA prohibits retaliation for complaining of employment discrimination on the basis of age.  Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006).  However, Plaintiff's allegations and the evidence he offers is insufficient to establish a *prima facie* case of wrongful retaliation.

A *prima facie* case of retaliation requires Plaintiff to offer sufficient evidence for a rational trier of fact to conclude that 1) plaintiff engaged in a protected activity; 2) that the defendant knew of the activity; 3) that plaintiff was subjected to an adverse employment action; and 4) a causal connection exists between the protected activity and the adverse employment action.  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  In the instant case, Plaintiff has not shown he was engaged in a protected activity.  Plaintiff complained twice about not receiving the Albany position, but he never complained of age discrimination, the type of activity protected by the ADEA.  Nor is there anything in Plaintiff's submissions suggesting that he was engaged in some other protected activity.  Thus, no issue of triable fact exists, and the Court grants summary judgment in favor of Defendant as to Plaintiff's claim of wrongful retaliation.

## IV.    CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED,** that Defendant's Motion for summary judgment (Dkt. No. 40) is **GRANTED**; and it is further

**ORDERED,** that this case is **DISMISSED** in its entirety; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED**

DATED:      March 23, 2010
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge